UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                                     :

UNITED STATES OF AMERICA.,              :

                          Plaintiffs,      :

    -against-                            :              MEMORANDUM DECISION
                                                :                    AND ORDER

KARINA CHAIREZ,                            :              20 CR. 398 (GBD)

                          Defendant.      :

------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

       On September 4, 2024, Karina Chairez ("Defendant"), acting pro se, filed two motions: (1) a motion requesting that this Court consider a sentence reduction pursuant to the Sentencing Guideline amendment effective November 1, 2023 and (2) a motion for the return of property pursuant to Federal Rule of Criminal Procedure 41(g) on the criminal docket. (Def.'s Mot. for Miscellaneous Relief, ("First Mot."), ECF No. 303.) On October 7, 2024, Defendant filed a subsequent motion requesting this Court to reduce the forfeiture amount from $400,000 to $0. (Def.'s Mot. for Miscellaneous Relief, ("Second Mot."), ECF No. 305.)

       Having reviewed the record in this case, this Court finds that Defendant is ineligible for a sentence reduction because her original sentence fell below the Guideline range. Defendant is also ineligible for a reduction in the ordered forfeiture. Further, Defendant's motion for return of property is a civil motion that should be filed under a new civil docket number.

## I. FACTUAL BACKGROUND

On or about January 21, 2023, Defendant pleaded guilty to conspiracy to commit wire fraud and conspiracy to commit money laundering for her role in a global cryptocurrency pyramid scheme. (Plea Hr'g Tr., ECF No. 175 8:2–7.) On October 3, 2023, this Court sentenced Defendant to a below-Guideline sentence of one year and one day of imprisonment with three years of supervised release, and ordered forfeiture of $400,000.[1] (Sent'g Tr., ECF No. 277 49:6–14.) On June 3, 2024, Defendant stipulated and agreed that the money judgment in the amount of $400,000 represented the "proceeds traceable to the offense charged in Count One of the Indictment that Defendant personally obtained and property involved in Count Two of the Indictment." (Consent Prelim. Ord. of Forfeiture/Money J., ECF No. 292.)

On September 4, 2024, Defendant, acting pro se, filed a motion pursuant to 18 U.S.C. § 3582(c)(2) seeking a reduction of her sentence in light of Amendment 821 to the United States Sentencing Guidelines, which went into effect on November 1, 2023. (First Mot.) Also on September 4, 2024, Defendant moved for the return of her cell phone under Fed. R. Crim. P. 41(g). (*Id.*) Then, on October 7, 2024, Defendant moved to reduce the forfeiture amount to zero. (Second Mot.) The Government opposed all three of Defendant's motions in a letter to the court dated October 17, 2024. (Gov't Letter Mot., ECF No. 312.) Defendant's reply to the Government was received by this Court on November 7, 2024. (Pl.'s Letter Mot., ECF No. 337.)

## II. DEFENDANT IS NOT ELIGIBLE FOR A REDUCTION IN HER SENTENCE

Defendant is ineligible for her requested reduction because she was originally sentenced to a term that fell under the low end of the amended guidelines range.[2] Generally, a federal court

---

[1] Defendant has been released as of January 3, 2025. *See* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc.

[2] Courts in this district have repeatedly denied a reduction of sentence pursuant to Amendment 821 for similarly situated defendants with no past criminal history when their original sentencing falls below the

2

may not "modify a term of imprisonment once it has been imposed." *United States v. Zapatero*, 961 F.3d 123, 127 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(b)–(c). Section 3582(c)(2) provides an exception:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of Defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2); *see also United States v. Morel*, No. 11-cr-1032-54, 2024 WL 4751270, at *5–6 (S.D.N.Y. Nov. 12, 2024).

The Supreme Court has found that § 3582(c)(2) proceedings follow a "two-step approach." *Dillon v. United States*, 560 U.S. 817, 827 (2010); *see Morel*, 2024 WL 4751270 at *6. At step one, the court "determine[s] the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. . . . Second, the Court must 'consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.'." *Morel*, 2024 WL 4751270, at *6 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

The Sentencing Guidelines were amended in 2023 to include Amendment 821, which applies retroactively. *Morel*, 2024 WL 4751270, at *6 (citing 88 Fed. Reg. 28254, 28271 (May 3, 2023) (amendment); 88 Fed. Reg. 60,534, 60,535 (Sept. 1, 2023) (retroactivity)). "Amendment 821 . . . provides a two-point offense level reduction for certain so-called 'zero-point offenders,' i.e., defendants who have no criminal history points under Chapter Four, Part A, of the

---

recommended guideline range. *See, e.g., Sardarova*, 2024 WL 259775, at *1; *United States v. Ross*, No. 15-CR-95, 2024 WL 149130, at *1–2 (S.D.N.Y. Jan. 12, 2024).

3

Guidelines." *United States v. Sardarova*, No. 20-CR-681, 2024 WL 259775, at *1 (S.D.N.Y. Jan. 12, 2024); *United States v. Peralta*, No. 22-CR-150, 2024 WL 81510, at *1 (S.D.N.Y. Jan. 8, 2024).

To determine whether, and to what extent, a defendant's sentence reduction is warranted pursuant to Amendment 821, the court first "'shall determine the amended guideline range that would have been applicable to Defendant if' Amendment 821 'had been in effect at the time Defendant was sentenced.'" *Sardarova*, 2024 WL 259775, at *1 (quoting U.S.S.G. § 1B1.10(b)(1)). However, "if a defendant was originally sentenced to a term of imprisonment that falls below the low end of the amended Guidelines range, that defendant is ineligible for a reduction under Section 3582(c)(2)." *Id.*; *United States v. Young*, 998 F.3d 43, 46 n.1 (2d Cir. 2021).

At sentencing, Defendant's offense level was 28, Criminal History Category I, which resulted in a Guideline range of 78–97 months. *See* U.S.S.G. Ch. 5, Pt. A; Sent'g Tr. 16:22–17:6, 48:5–7. Had Amendment 821 been in effect, Defendant's offense level would have been reduced by two points, for an offense level of 26. Assuming an offense level of 26, with a Criminal History Category of I, Defendant's Guidelines range would have been 63–78 months' imprisonment. *See* U.S.S.G. Ch. 5, Pt. A; Sent'g Tr. 18:9–11. Defendant's actual sentence was one year and one day, (J., ECF No. 268, at 2; Sent'g Tr. 49:6–10), a term lower than the amended range. Thus, under *Sardarova*, Defendant is not eligible for a reduction in her sentence.

Defendant also argues that her sentence reduction should be granted because she "provided substantial assistance to the government." (Pl.'s Letter Mot. at 1) However, there is no evidence that Defendant provided "substantial assistance" to the Government either prior to or after sentencing. *United States v. Marat-Uulu*, No. 17-CR-350, 2024 WL 4566115, at *3 (S.D.N.Y.

4

Oct. 24, 2024); U.S.S.G. 1B1.10 § (2)(B). Nor has the Government submitted a 5k1.1 letter or application on Defendant's behalf.

Accordingly, Defendant is ineligible for a reduction in her sentence pursuant to Amendment 821 and her motion for a sentence reduction is denied.

### III.   Motion for the Return of Property

Under Rule 41(g), a person aggrieved by the deprivation of their property "may move for the property's return" and "the court must receive evidence on any factual issue necessary to decide the motion." *United States v. Figueroa*, No. 22 MAG. 4490, 2022 WL 2873226, at *2 (S.D.N.Y. July 21, 2022) (quoting Fed. R. Crim. P. 41(g)). A Rule 41(g) motion brought after the criminal proceedings have ended is treated as a civil equitable action. *Diaz v. United States*, 517 F.3d 608, 610 (2d Cir. 2008); *see also Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 394 (2d Cir. 2023).

Generally, to prevail on a Rule 41(g) motion, "the moving party must demonstrate that: '(1) [the party] is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended.'" *Figueroa*, 2022 WL 2873226, at *2 (quoting *United States v. Corley*, No. 13 Cr. 48, 2020 WL 4676650, at *13 (S.D.N.Y. Aug. 11, 2020)). In an ongoing criminal proceeding, "the defendant bears the burden of demonstrating that the government's retention of the seized property is unreasonable." *Allen*, 88 F.4th at 396. Once the criminal proceeding has been completed, "the evidentiary burden under Rule 41(g) shifts to the government to demonstrate that it has a 'legitimate reason' for retaining the seized property." *Id.*

Although Rule 41(g) is a rule of criminal procedure, not one relating to processing civil cases, this circuit treats "Rule 41(g) motions after the completion of criminal proceedings as stand-alone civil actions in equity that are conceptually and procedurally distinct from the actions in

5

which the motions were docketed." *Id. at* 394. Criminal proceedings are considered "complete" once trial is complete, a sentence has been imposed, and judgment has been entered by the District Court. *See United States v. Rowland*, No. 23-1821, 2024 WL 3250909, at *4 (3d Cir. July 1, 2024).

### 1. Defendant's Motion for the Return of Property Became a Civil Action Upon the Denial of Her Codefendant's Direct Appeal

On September 4, 2024, Defendant acting pro se, filed this motion for the return of property under Federal Rule of Criminal Procedure 41(g) while her codefendant's direct appeal was pending. (*See* Gov't Letter Mot. at 1.) Since then, her codefendant's direct appeal has been denied, thereby terminating Defendant's criminal proceedings. *See Allen*, 88 F.4th at 399 (discussing the fact that criminal proceedings were not terminated for the purposes of Rule 41(g) while an appeal was pending). Therefore, because Defendant's criminal action is now closed, Defendant's Rule 41(g) motion to return property should be filed as a new civil action.

To proceed with a civil action in this Court, Defendant must either pay $405.00 in fees—a $350.00 filing fee plus a $55.00 administrative fee—or request permission to proceed without prepayment of fees by submitting a signed *in forma pauperis* (IFP) application and a prisoner authorization. *See* 28 U.S.C. §§ 1914, 1915; *Kelly v. Moores*, No. 24-CV-5844, 2024 WL 4125734, at *1 (S.D.N.Y. Aug. 1, 2024); *see also Kee v. United States,* No. 20CV1840, 2020 WL 2115350, at *2 (S.D.N.Y. May 4, 2020). Here, Defendant submitted the application for the return of property on the criminal docket, and without paying the requisite filing fees or submitting a completed IFP application and prisoner authorization.

### 2. The Government No Longer Has a Legitimate Reason to Retain the Property

Generally speaking, the Government may not retain a defendant's property after the denial of a direct appeal without a legitimate reason to retain the property. Although "the pendency of a direct appeal or a post-conviction proceeding might justify the government's further retention of

6

property as potential evidence in a criminal case," once the judgment is entered, and the defendant "forego[es] an appeal or a post-conviction motion," the defendant may seek immediate return of property. *United States v. Mendez*, 860 F.3d 1147, 1150 (8th Cir. 2017); *see Santiago-Lugo v. United States*, 538 F.3d 23, 24–25 (1st Cir. 2008).

Here, the only reason the Government provides for retaining the cellphone is that Defendant filed this motion while her codefendant's direct appeal was pending, and that pending appeal is a "sufficient justification for the Government to retain evidence in this case." (Gov't Letter Mot. at 2.) That direct appeal has since been denied, thereby terminating Defendant's criminal proceedings and shifting the burden to the Government to prove it has a legitimate reason to further retain Defendant's cell phone. The chance that the codefendant may file a subsequent motion is not a legitimate reason for the Government's retention of Defendant's property. *See Rowland*, 2024 WL 3250909, at *3 n.4 ("[T]here is no merit to the Government's argument for indefinite possession of [Defendant]'s property on the ground that, 'even if all of [Defendant]'s convictions are affirmed, he may well file a motion for relief under 28 U.S.C. § 2255.'"). Here, The Government has not offered any other basis for its continued evidentiary interest in Defendant's cellphone.[3]

In sum, Defendant is directed to properly file her motion as a civil motion by following the procedures outlined above. Provided that she does, Defendant is entitled to the presumption that her property is returnable, and the Government should return Defendant's cell phone to Defendant.[4]

---

[3] In addition, the seized cellphone is not contraband, subject to forfeiture, or being used as evidence in related criminal proceedings. *See Mendez v. United States*, No. 99CIV. 3496, 2003 WL 21673616, at *3-4 (S.D.N.Y. July 16, 2003).

[4] The Government should voluntarily return this property within thirty days of this Order unless it states a valid legal reason to retain the cellphone. This should moot the need for a civil motion.

7

## IV. Request for the Reduction of Forfeiture

Defendant requests a reduction in forfeiture as she is "destitute, disabled, and unable to pay restitution now or in the future" and has no income or employment upon her release. (Second Mot.)[5] The Government argues that Defendant has "not shown that the forfeiture here is unconstitutionally excessive, meaning that it is 'grossly disproportional to the gravity of defendant's offense.'" (Gov't Letter Mot. at 3.) "Under 18 U.S.C. § 981, '[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' or a conspiracy to commit such offense,' including wire fraud, is subject to forfeiture." *United States v. Carmona*, No. 1:22-CR-00551, 2025 WL 315907, at *5 (S.D.N.Y. Jan. 28, 2025) (quoting 18 U.S.C. § 981(a)(1)(C)). "'[P]roceeds' . . . is not limited to the net gain or profit realized from the offense." *Carmona*, 2025 WL 315907, at *5 (quoting *United States v. Kenner*, 443 F. Supp. 3d 354, 363 (E.D.N.Y. March 10, 2020)). This broad forfeiture provision is limited by the Eighth Amendment's Excessive Fines Clause. *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010).

In *United States v. Bajakajian*, the Supreme Court established a two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The first step requires the court to determine whether the Excessive Fines Clause applies at all. *Id.* The Supreme Court has held that a forfeiture is a "fine" subject to Eighth Amendment scrutiny if it is punitive, meaning it "constitute[s] punishment for an offense." *Id.* at 328 (citation omitted). If the court determines that the Excessive Fines Clause applies, the court proceeds to the second step to determine whether the challenged

---

[5] Defendant's Motion is characterized as a "Motion to Reduce Restitution." (Second Mot.) However, there was no restitution ordered in this case, and Defendant's requested reduction amount is the amount of the ordered forfeiture. (*See* Consent Prelim. Order of Forfeiture, ECF No. 292; Order, ECF No. 283.) This Court therefore treats this motion as a Motion for Reduction in Forfeiture.

8

forfeiture is unconstitutionally excessive, which rests on whether it is "grossly disproportional to the gravity of Defendant's offense." *Id.* at 334. At the second step, the defendant has the burden of proving the unconstitutionality of the forfeiture. *Castello,* 611 F.3d at 120.

This circuit has interpreted *Bajakajian* as requiring courts to consider the following four factors:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct."

*United States v. Viloski,* 814 F.3d 104, 110 (2d Cir. 2016); *see United States v. Patterson,* No. 21-1678-CR, 2022 WL 17825627, at *5 (2d Cir. Dec. 21, 2022). The *Bajakajian* factors are not to be applied "too rigidly" and are not exhaustive. *See Viloski,* 814 F.3d at 110–11. Courts may also consider "whether the forfeiture would deprive the defendant of his 'livelihood,'" but may not consider the "defendant's personal circumstances, such as age, health, or present financial condition." *Id.* at 112. Lastly, courts may also consider whether the forfeiture ordered is "in an amount equivalent to the undisputed, actual proceeds of the fraud." *United States v. Bonventre,* 646 Fed. Appx. 73, 92 (2d Cir. 2016); *see Patterson,* 2022 WL 17825627, at *6.

The Excessive Fines Clause applies to the instant matter because the challenged forfeiture is a "fine." The forfeiture was "imposed at the culmination of a criminal proceeding that required a conviction of the underlying felony," and it "could not have been imposed upon an innocent party." *Viloski,* 814 F.3d at 109 (citation omitted); *see Bajakajian,* 524 U.S. at 328.

In determining whether the challenged forfeiture is unconstitutionally excessive, we begin with the four *Bajakajian* factors. First, we consider "the essence of the crime of the defendant and its relation to other criminal activity," which supports the constitutionality of the forfeiture. Defendant plead guilty of conspiracy to commit wire fraud and conspiracy to commit money

9

laundering. (Judgment, ECF No. 268, at 1.) Here, the crime that gave rise to the forfeiture order was related to a global cryptocurrency pyramid scheme; in other words, this was a substantively economic crime that was linked to significant other criminal activity.

Second, we consider "whether the defendant fits into the class of persons for whom the statute was principally designed." Here, Defendant fits squarely into the class of persons for whom the federal wire and money-laundering statutes were designed: "those who use facilities of interstate or foreign commerce to engage in fraudulent schemes and then seek to conceal or disguise the nature of the proceeds of the fraud." *Viloski*, 814 F.3d at 114.

Third, we consider "the maximum sentence and fine that could have been imposed." Under Count One, conspiracy to commit wire fraud, the maximum penalty that could have been imposed is a maximum term of up to 20 years' imprisonment, a maximum term of up to three years' supervised release, and a fine of up to $250,000 or twice the gain or loss from the offense. (Plea Hr'g Tr. 8:10–17.) As to Count Two, Defendant could have been fined within a range of $250,000 to $1,600,000 under the Guideliness.[6] The challenged forfeiture here of $400,000 is less than the maximum fine of $1,600,000, which supports the constitutionality of the ordered forfeiture.

Fourth, we consider "the nature of the harm caused by the defendant's conduct," which also supports the current forfeiture because the underlying crime caused immense harm to various victims. (Gov't Sent'g Submission, ECF No. 245, at 5.)[7] The Airbit Club Ponzi Scheme in which Defendant participated inflicted "serious economic damage" on at least 500 victims. (*Id.*)

---

[6] $1,600,000 is equal to twice the gain or loss from Count 1 ($800,000) plus twice the value of the property involved in the transaction underlying Count 2 ($800,000).

[7] This document is from the Government's sentencing submission for Pablo Renato Rodriguez, a co-defendant in this case.

10

Here, Defendant requests a reduction in forfeiture as she is "destitute, disabled, and unable to pay restitution now or in the future" and has no income or employment upon her release. (Second Mot.). Defendant has not demonstrated that the forfeiture would deprive her of her future ability to earn a living. Instead, Defendant requests this Court to consider her personal circumstances, including her disability and present financial condition. As emphasized above, these circumstances are not relevant in determining whether the challenged forfeiture is unconstitutionally excessive. *See Viloski*, 814 F.3d 114–115.

Lastly, this circuit has declined to find forfeiture orders "grossly disproportional to the gravity of [the] offense" when the forfeiture ordered is "in an amount equivalent to the undisputed, actual proceeds of the fraud." *Bonventre*, 646 Fed. Appx. at 92; *see Patterson*, 2022 WL 17825627, at *6. Here, Defendant's proceeds from the Airbit Ponzi scheme equals the amount of the forfeiture ordered. Additionally, Defendant consented to the challenged forfeiture and stipulated that a money judgment in the amount of $400,000 represents the proceeds Defendant obtained in Count One, and the property obtained in Count two. (Consent Prelim. Ord. of Forfeiture/Money J.) Therefore, the forfeiture order in the present case is not grossly disproportional.

Defendant is ineligible for a reduction in the forfeiture amount because she has not established that the $400,000 in forfeiture is unconstitutionally excessive under the Excessive Fines Clause of the Eighth Amendment. *See Viloski*, 814 F.3d at 111–12; *Bajakajian*, 524 U.S. at 334. Accordingly, Defendant's request to reduce the ordered forfeiture is denied.

## V. CONCLUSION

Defendant's request to reduce her sentencing (First Mot.), and her request to reduce the forfeiture amount (Second Mot.), are DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 303 and 305 accordingly.

Dated: New York, New York
APR 0 7 2025

SO ORDERED.

_George B Daniels_
GEORGE B. DANIELS
United States District Judge

12